IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MICHAEL MARTINEAR, AIS # 144612, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CIVIL ACTION NO. 1:03cv1270-F (WO) |
| LAMAR GLOVER, *et al.*, | ) ) ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

In this 42 U.S.C. § 1983 action, Michael Martinear ("Martinear") asserts that the defendants acted with deliberate indifference to his health by failing to ensure that he receive appropriate meals, screen inmates for various diseases, and provide him socks and underwear. In addition, he challenges the defendants' method of withdrawing money for medical services from his jail account. He also asserts that jail officials violated the state health code and retaliated against him for filing this lawsuit. Martinear names Lamar Glover ("Glover"), Sheriff of Houston County; Walter L. Bowers ("Bowers"), Commander of Jail Operations; Darla Jane Speigner ("Speigner"), a certified nurse practitioner; and Corrections Officers Cindy Buchman ("Officer Buchman") and Jacqueline Britt ("Officer Britt") as defendants.

The defendants filed a written report and supporting evidentiary materials addressing Martinear's claims. The court deems it appropriate to treat these responsive pleadings as a

motion for summary judgment. Upon consideration of such motion, the evidentiary materials filed in support thereof, and the response in opposition filed by Martinear, the court concludes that the defendants' motion for summary judgment should be granted.

## I. FACTS

As recounted in this section, the facts, which are set forth in a light most favorable to Martinear, show that his time in the Houston County Jail was not a happy time. Upon entering the jail in September 2003, Martinear informed medical personnel that he suffered from stomach problems and was unable to eat certain foods. Approximately two weeks after Martinear notified the medical staff of his condition, a nurse ordered that he receive a "bland diet." (Doc. # 1 at p. 3.) Despite the nurse's instructions, Martinear continued receiving the same meals as other inmates. On occasion, Martinear traded part of his meals for soup and crackers. (*Id.*) Martinear submitted complaints to Bowers and a corrections officer concerning his need for appropriate meals.[1] In December 2003, he went to the clinic and informed Speigner that he was not being provided a bland diet tray as ordered. (*Id.*) At one point, Martinear feared that he would suffer from stomach problems and sought medical treatment for his anxiety. (*Id.*)

On December 31, 2003, Martinear, Bowers, and Ms. Jackson[2] met and discussed

---

[1] In his complaint, Martinear alleges that cold food causes him to suffer from stomach cramps. (Doc. # 1 at p. 3.)

[2] For purposes of this Recommendation, the court assumes that Ms. Jackson either supervises or assists in the serving of inmate meals at the jail.

2

Martinear's special diet requirements. (Doc. # 35, Attach. to Bowers' Affid.) The next day, Martinear did not receive his special meal as requested. (*Id.*) Martinear complained to Bowers that he ate two peanut butter sandwiches while all the other inmates received complete meals. (*Id.*) On January 2, 2004, Bowers notified Martinear that he "talked with Ms. Jackson today [and that] she . . . corrected the problem." (*Id.*) A few weeks later, Martinear complained that stewards were leaving juice on the table in the day room where other inmates have access to the cups and that "from time to time there is a fly." (*Id.*)

On another occasion, Martinear's laundry bag and underclothes were removed from his cell. (Doc. # 1 at p. 8.) On November 14, 2003, Martinear submitted an inmate request form to Officer Bush, requesting a laundry bag, T-shirt, and underwear. (*Id.*) Within a few days, Officer Bush responded that the problem was resolved. (*Id.*) On November 23, 2003, Martinear submitted an additional inmate request, in which he reminded Officer Bush that he had not received his requested items. (*Id.*) Officer Bush responded that he "[could] get [Martinear] the laundry bag but not the underclothes. Don't have any to give." (*Id.*) On laundry day, Martinear again reminded Officer Bush of his need for underclothes and his request was granted. (*Id.*)

## II. STANDARD OF REVIEW

To survive the defendants' properly supported motion for summary judgment, the plaintiff is required to produce some evidence supporting his constitutional claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Specifically, he must "go beyond the

3

pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324. A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). Consequently, when a plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case, and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322; *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607 (11th Cir. 1987). Where all the materials before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex Corp.*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987). Although factual inferences must be viewed in a light most favorable to the non-moving party, and pro se complaints are entitled to liberal interpretation by the courts, a pro se litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).

### III. DISCUSSION

#### A. Deliberate Indifference

A jail official's deliberate indifference to a known and substantial risk of serious harm to an inmate violates the Eighth Amendment. *See Helling v. McKinney*, 509 U.S. 25 (1993); *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001). A jail official may be held

4

liable under the Constitution for acting with "deliberate indifference" to an inmate's health or safety when the official knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825 (1994). In order to prevail on an Eighth Amendment claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that jail personnel acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Aldridge v. Montgomery*, 753 F.2d 970, 972 (11th Cir. 1985).

1.   **The Bland Diet**

Martinear's allegation that the defendants failed to ensure that he receive a special diet tray is unfounded. The medical records demonstrate that a nurse practitioner and other health care professionals examined and evaluated Martinear concerning his stomach problems. It is undisputed that a nurse ordered that Martinear receive a bland diet tray and that, within a few days after meeting with Bowers and Ms. Jackson, Martinear began receiving special meals. Martinear presents no evidence demonstrating that the defendants disregarded a substantial risk to his health. Consequently, Martinear has failed to establish that the defendants acted with deliberate indifference to his medical needs.

To the extent Martinear claims that the defendants acted with deliberate indifference to his health by failing to provide him a warm meal, he is entitled to no relief. Only actions which deny inmates "the minimal civilized measure of life's necessities" are grave enough

5

to violate the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "The constitution requires that prisoners be provided 'reasonably adequate food.'" *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985). "A well-balanced meal, containing sufficient nutritional value to preserve health, is all that is required." *Hamm*, 774 F.2d at 1575. "The fact that food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation." *Id.* at 1575. Martinear has not shown that he was deprived of the nutrition necessary to preserve health. In the absence of such a showing, the plaintiff's claim that he was served cold food fails to assert a sufficiently grave deprivation of the minimal civilized measure of life's necessities.[3]

In light of the foregoing, the court concludes that summary judgment should be granted in favor of the defendants with respect to Martinear's claim that the defendants acted with deliberate indifference to his health by failing to ensure that he receive a special diet tray and a hot meal. *See Celotex, supra.*[4]

### 2.    Screening for Contagious Diseases

Martinear contends that the defendants acted with deliberate indifference to his health by failing to screen inmates for tuberculosis, hepatitis, human immunodeficiency virus ("HIV"), and other contagious diseases upon their entry into the jail. He also maintains that

---

[3] Although Martinear alleges that he is medically required to receive warm meals because cold food causes him to suffer from stomach cramps, nothing in the medical records substantiates this claim.

[4] Martinear is not entitled to relief based on any delay in providing him an appropriate diet. Martnear has come forward with no evidence that any delay harmed him in any way or made any medical condition of his worse. *See Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1188-89 (1994).

6

his constitutional rights were violated because another inmate suffered a staph infection which could have spread throughout the jail.

It is well-settled law that exposing an inmate to a serious, communicable disease for a prolonged period is a serious threat to an inmate's health. *See Helling v. McKinney*, 509 U.S. 25, 33 (1993) ("Nor can we hold that prison officials may be deliberately indifferent to the exposure of inmates to a serious, communicable disease on the ground that the complaining inmate shows no serious current symptoms."); *Gates v. Collier*, 501 F.2d 1291 (5th Cir. 1974) (inmates who prove threats to their safety and health from exposure to electrical wiring, fire code violations, and the intermingling of inmates with serious contagious diseases with healthy inmates are entitled to relief under the Eighth Amendment). However, jail administrators are not required to test incoming inmates for contagious diseases. *See Davis v. Stanley*, 740 F.Supp. 815, 818 (N.D. Ala. 1987) (holding that a jail administrator's failure to test inmates for HIV did not establish an Eighth Amendment violation).

In this case, Martinear has not shown that he was exposed to tuberculosis, hepatitis, or HIV for a prolonged period or that he contracted any serious contagion during his confinement in the Houston County Jail. In addition, Martinear admits that the defendants screen all inmates who apply to work as kitchen stewards and trustees. (Doc. # 1 at p. 7.) The court therefore concludes that Martinear has failed to show that the defendants acted with deliberate indifference to his health and safety by failing to screen incoming inmates for

7

contagious diseases. Consequently, the defendants' motion for summary judgment with respect to this claim should be granted. *See Celotex, supra.*

### 3. Visits to the Jail Clinic

Martinear contends that the defendants removed money from his jail account for services he did not receive. Specifically, he asserts that jail officials charged him for visits to the clinic even though a nurse failed to provide him appropriate treatment for his "swelling stomach." In addition, he asserts that the defendants failed to provide him notice of charges and "double charged" him for services.

To the extent Martinear asserts that the defendants acted with deliberate indifference to his health for failing to provide appropriate medical treatment for his stomach condition, his claim is unfounded. The medical records demonstrate that Martinear was routinely provided medication for his stomach condition and that he was evaluated by medical personnel throughout his incarceration in the Houston County Jail. (Doc. # 35, Attach. to Speigner's Affid.) Although Martinear believes that medical personnel should have provided him different treatment, he has failed to show that the defendants disregarded a substantial risk to his health. The mere fact that an inmate desires a different mode of medical treatment does not amount to deliberate indifference. *Hamm v. DeKalb County*, 774 F.2d 1567 (11th Cir. 1985). Moreover, a difference of medical opinion does not constitute deliberate indifference. *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989). Consequently, the defendants' motion for summary judgment with respect to this deliberate indifference claim

8

should be granted.

Martinear also asserts that the defendants violated his constitutional rights by charging him for visits to the jail clinic. Specifically, he challenges the jail's accounting methods and contends that he should not have been charged for evaluations conducted by a nurse.[5] Although the Eighth Amendment's prohibition against cruel and unusual punishment requires the provision of medical care for persons in custody, the Constitution does not dictate the allocation of such costs. *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 245 (1983) (stating that "nothing we say here affects any right a hospital or government entity may have to recover the cost of medical services provided to him."). The mere fact that Martinear is assessed a fee for each visit to the jail clinic does not in any way deprive him of a protected right, privilege, or immunity. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 408 (9th Cir. 1985) (imposition of fee for medical treatment provided to an inmate does not amount to a constitutional violation); *Bester v. Dr. Wilson*, 2000 WL 1367984, at *8 (S.D. Ala. August 18, 2000) ("[T]he charging of a fee to prisoners for medical treatment from their funds has been held to be constitutional when challenged on several due process and Eighth Amendment grounds."). Martinear has not shown that he was denied any medical treatment because he was unable to pay the fee. Thus, he has failed to show a violation of his constitutional rights. The court therefore concludes that the

---

[5] He also argues that he should not have been charged for discussing the withdrawal of money from his account during a visit with a nurse at the clinic.

9

defendants' motion for summary judgment with respect to this claim should be granted.[6] *See Celotex, supra.*

### 4. The Laundry Bag

Martinear asserts that the defendants acted with deliberate indifference to his health by failing to provide him a clean T-shirt and underwear for several days in November 2003. It is undisputed that jail personnel were unable to provide Martinear a T-shirt and underwear because none were available at that time. (Doc. # 35, Attach. to Bowers' Affid.) In addition, Martinear presents no evidence that he suffered anything more than minor discomfort due to the temporary loss of his underclothes. Thus, Martinear has failed to show that the defendants disregarded a substantial risk to his health. Consequently, the defendants' motion for summary judgment with respect to Martinear's claim that the defendants acted with deliberate indifference to his health by failing to provide him underclothes should be granted.

### 5. The Placement of Juice Cups

Martinear contends that the defendants acted with deliberate indifference to his health and violated state health codes by placing cups of juice in the day room before breakfast each

---

[6] To the extent Martinear contends that the defendants committed an unconstitutional taking of his property by removing money from his jail account, this claim entitles the plaintiff to no relief as he has not alleged a constitutional violation. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984). The law is well settled "that an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause . . . if a meaningful postdeprivation remedy for the loss is available." *Hudson*, 468 U.S. at 533; *Rodriguez-Mora v. Baker*, 792 F.2d 1524, 1527 (11th Cir. 1986). The State of Alabama, through its Board of Adjustment, provides a meaningful post-deprivation remedy for plaintiff to seek redress from the defendants for the alleged taking of his property. *Ala. Code* § 41-9-60 *et seq.* (1982).

morning. Specifically, he alleges that the placement of twenty cups on a table endangered his health because inmates sleeping in the day room could have tampered with his juice. Martinear has failed to point to any evidence indicating that the placement of a group of juice cups on a table each morning caused him to suffer an illness or other serious misfortune. Moreover, as previously discussed, Martinear has not shown that he was deprived of the nutrition necessary to preserve health. Thus, Martinear has failed to demonstrate that he was deprived of the minimal civilized measure of life's necessities. *See Hamm, supra*. Consequently, Martinear has failed to establish that the defendants acted with deliberate indifference to his health by placing juice cups in the day room at the Houston County Jail. Thus, the defendants' motion for summary judgment with respect to this claim should be granted. *See Celotex, supra*.

To the extent Martinear asserts that the defendants violated the state health code, his state law claim does not rise to the level of a federal constitutional violation. The court's exercise of supplemental jurisdiction over this state law claim is discretionary. Under 28 U.S.C. § 1367(c)(3), the court may "decline to exercise supplemental jurisdiction over a [state law] claim if the district court has dismissed all claims over which it has original jurisdiction . . . " The court's discretion is advised by *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966), in which the Court held that

> [n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed.

11

before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

*Id.* at 726. *See also Carnegie-Mellon University v. Cohill*, 484 U.S. 343 (1988). Accordingly, the court concludes that because all of Martinear's federal claims will be dismissed, the state health code claim should be dismissed without prejudice.

### B. The Retaliation Claims

Martinear contends that Officers Britt and Buchman retaliated against him for filing this lawsuit by harassing and pursuing disciplinary action against him. The method of establishing a retaliation claim is essentially the same as for a claim of race or sex discrimination. *Donnellon v. Fruehauf Corporation*, 794 F.2d 598, 600-01 (11th Cir. 1986). An inmate has the initial burden of establishing a prima face case of unlawful retaliation by a preponderance of the evidence, which once established raises a presumption that the prison official retaliated against the inmate. *Texas Dep' t of Comty Affairs v. Burdine*, 450 U.S. 248 (1981).

To establish a prima facie case, an inmate must show that he was engaged in a protected activity, such as the filing of a lawsuit; that he suffered an adverse treatment simultaneously with or subsequent to such activity; and that there was a causal link between the protected activity and the adverse treatment. *Donnellon*, 794 F.2d at 600-01.

If an inmate establishes a prima facie case, the burden then shifts to prison officials to rebut the presumption by producing sufficient evidence to raise a genuine issue of fact

12

as to whether the prison official retaliated against the inmate. This may be done by the prison official articulating a legitimate, non-retaliatory reason for the adverse decision or action, which is clear, reasonably specific and worthy of credence. The prison official has a burden of production, not of persuasion, and thus does not have to persuade a court that he or she actually was motivated by the reason advanced. *Burdine*, *supra*. Once the prison official satisfies this burden of production, the inmate then has the burden of persuading the court that the proffered reason for the adverse decision is a pretext for retaliation. An inmate may satisfy this burden by persuading the court either directly that a retaliatory reason more than likely motivated the prison official or indirectly that the proffered reason for the adverse decision is not worthy of belief. By so persuading the court, the inmate satisfies his ultimate burden of demonstrating by a preponderance of the evidence that he has been the victim of unlawful retaliation. *Burdine*, *supra*.

Martinear alleges that the defendants retaliated against him for filing this lawsuit, thus satisfying his burden of establishing that he was engaged in a protected activity. *See Donnellon*, 794 F.2d at 600-01. However, the defendants have shown that Officer Britt initially charged Martinear with violating Rule 21 because someone in his cell closed the cell door and activated the emergency call button during a shakedown.[7] (Doc. # 35, Attach. to Bowers' Affid.) The defendants have also demonstrated that Officer G. Jones

---

[7] The court notes that Bowers reversed Officer Britt's decision after reviewing evidence indicating that Martinear's cellmate accidentally closed the cell door.

13

Case 1:03-cv-01270-MEF-CSC   Document 48   Filed 01/06/2006   Page 14 of 15

charged Martinear with violating Rule 12 and that Officer Buchman accepted the charge as the supervising officer because Martinear's jumpsuit was found at the foot of his bunk.[8] (*Id.*) The plaintiff has presented only his mere conclusory allegations that the defendants' actions were retaliatory. This is insufficient to show that the reason proffered by the defendants is pretextual. Therefore, summary judgment should be granted on this claim. *See Celotex, supra.*

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motion for summary judgment be GRANTED as to Martinear's federal claims and that those claims be DISMISSED with prejudice.

2. Martinear's state law claim be dismissed without prejudice.

3. This case be DISMISSED and that the costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before January 19, 2006 the parties shall file objections to the Recommendation. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive

---

[8] The defendants have also shown that Officer Buchman did not respond to Martinear's complaint about partially uncooked food because no one told her about the problem. (Doc. # 35, Attach. to Bowers' Affid.) In addition, they have demonstrated that Officer Buchman allowed the placement of juice cups in the day room "due to trying to get everyone fed, the medicines passed, and people going to court ready, and people going to prison ready all in a short period of time." (*Id.*)

14

or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 6th day of January, 2006.

/s/Charles S. Coody
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE